STATE OF NORTH CAROLINA v. LEE ROBERT MERRELL

No. COA10-1304

(Filed 7 June 2011)

**1. Criminal Law— voluntary intoxication—instruction not given—no plain error**

There was no plain error in a prosecution for the rape of a child under the age of thirteen and indecent liberties where the court did not give an instruction on voluntary intoxication. Defendant did not present evidence to support a conclusion that, at the time the acts were committed, his mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming the requisite intent.

**2. Satellite-Based Monitoring— statutory premise for order—incorrect**

The trial court erred by ordering a defendant convicted of the rape of a child under the age of thirteen and indecent liberties to register as a sex offender and to submit to lifetime satellite-based monitoring. The trial court's order was premised on violation of a statute under which defendant was not convicted.

Appeal by defendant from judgment entered 10 March 2010 by Judge Charles H. Henry in Carteret County Superior Court. Heard in the Court of Appeals 27 April 2011.

STATE v. MERRELL

[212 N.C. App. 502 (2011)]

*Attorney General Roy Cooper, by Assistant Attorney General Susannah B. Cox, for the State.*

*Russell J. Hollers, III, for defendant-appellant.*

BRYANT, Judge.

Where defendant fails to present evidence of intoxication to the degree required to show he was incapable of forming the requisite intent, the trial court did not err in failing to instruct the jury on voluntary intoxication. Where the trial court erred in ordering defendant to enroll in a satellite-based monitoring program for his natural life, we reverse the court's order on satellite-based monitoring and remand for a new hearing.

Defendant was indicted on charges of first-degree rape involving a child under the age of thirteen and five counts of taking indecent liberties with a child. The evidence presented at trial tended to show that defendant Lee Robert Merrell, age 47 at the time of trial, lived with his adult sister and her family throughout much of his adult life. At trial, his sister described him as a severe alcoholic: "He drank and was very rarely sober. He just woke up drinking and passed out drinking." The only job he was able to hold was working for the family of her husband. "[I]f he could work, he worked. If he couldn't, he couldn't, or they would find things for him to do around the house."

Q. Would you let him babysit your children?

A. Yes.

Defendant's sister had three children: two daughters and a son. The youngest daughter was Laura[1]. At trial, Laura testified that in 2002 and 2003, when she was nine and in the fourth grade, defendant began touching her in a way that made her feel uncomfortable. Testifying before a jury and family members in the audience, Laura recounted incidents such as when she returned to her living room to find defendant sitting on a couch wearing no pants, being forced to the floor by defendant while he wore no clothes, and, having her shirt pulled up and her pants pulled down. Laura testified that defendant tried to place his penis in her vagina but couldn't and instead rubbed it against her. On another occasion, defendant entered the bathroom just after Laura had taken a bath and touched her breasts. On two occasions, defendant came into Laura's bedroom and masturbated

---

1. A pseudonym has been used to protect the victim's identity.

while touching her. At dinner, defendant would sit beside Laura and rub her legs, at which point she would get up and go to the bathroom perhaps two or three times during the meal. Laura testified that defendant would touch her "[p]robably twice a week." Laura's immediate family members testified to noticeable changes in Laura's behavior around this time: if defendant was to watch her after school, Laura would not enter the house but ask the bus driver to call her mother or sit outside until someone else came home; at dinner, when defendant was sitting near her, Laura would be fidgety and often excuse herself to go to the bathroom two or three times during the meal. At the close of the evidence, a jury found defendant guilty of attempted first-degree rape of a female under the age of thirteen and five counts of taking indecent liberties with a child. The trial court entered judgment in accordance with the jury's verdict, sentencing defendant concurrently to 220 to 273 months for attempted first-degree rape and 21 to 26 months for each count of taking indecent liberties with a child. Following the entry of judgment and commitment, defendant gave oral notice of appeal. The next day, the court entered an order that upon his release from imprisonment defendant was to enroll in a satellite-based monitoring program for his natural life.

---

On appeal, defendant raises the following questions: did the trial court (I) commit plain error in failing to instruct the jury on voluntary intoxication; and (II) err in ordering defendant to register as a sex offender and submit to lifetime satellite-based monitoring.

*I*

[1] First, defendant argues the trial court erred in failing to instruct the jury on voluntary intoxication. Defendant contends that alcohol consumption was "his job, his hobby, and his life" and, because there is substantial evidence that he "blacked out" when he touched Laura, the trial court committed plain error in failing to instruct the jury on voluntary intoxication. We disagree.

Notwithstanding defendant's argument on appeal, defendant failed to request an instruction on voluntary intoxication during the trial. We review defendant's argument only for plain error.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error,

something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) (citation omitted).

Defendant was convicted of attempted first-degree statutory rape of a female child under the age of thirteen and five counts of indecent liberties with a child.

A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

N.C. Gen. Stat. § 14-27.2(a)(1) (2009). In order to convict a defendant of first-degree rape, the State must prove that the defendant had the intent to have vaginal intercourse with the victim. *State v. Nicholson*, 99 N.C. App. 143, 145, 392 S.E.2d 748, 750 (1990).

Defendant was also convicted of taking indecent liberties with a child.

A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1 (2009).

The crime of taking indecent liberties with a minor is a specific intent crime. A specific intent crime requires the State to prove

that defendant acted willfully or with purpose in committing the offense. However, a defendant's purpose in committing the act in an indecent liberties case is seldom provable by direct evidence and must ordinarily be proven by inference.

*State v. Creech*, 128 N.C. App. 592, 598, 495 S.E.2d 752, 756 (1998) (internal citations and quotations omitted). Where a crime requires a showing of specific intent, voluntary intoxication may be a defense to the criminal charge. *State v. Harris*, 171 N.C. App. 127, 131, 613 S.E.2d 701, 704 (2005) (citing *State v. Jones*, 300 N.C. 363, 365, 266 S.E.2d 586, 587 (1980)).

> [However,] voluntary drunkenness is not a legal excuse for crime. . . . [I]t is said that the law does not permit a person who commits a crime in a state of intoxication to use his own vice or weakness as a shelter against the normal legal consequences of his conduct. . . . When, on a given occasion, a person takes his first drink by choice and afterwards drinks successively and finally gets drunk, that is voluntary intoxication, even though he may be an alcoholic.

*State v. Bunn*, 283 N.C. 444, 457, 196 S.E.2d 777, 786 (1973) (internal citations and quotations omitted). While most often stated in the context of discussing the premeditation and deliberation elements of first-degree murder, our appellate courts have consistently held that "[f]or [voluntary intoxication] to constitute a defense it must appear that [the] defendant was not able, by reason of drunkenness, to think out beforehand what he intended to do and to weigh it and understand the nature and consequence of his act." *Id.* at 461, 196 S.E.2d at 788 (quoting *State v. Cureton*, 218 N.C. 491, 494, 11 S.E.2d 469, 470-71 (1940)); *see also State v. Long*, 354 N.C. 534, 557 S.E.2d 89 (2001); *State v. Mash*, 323 N.C. 339, 372 S.E.2d 532 (1988)).

> Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming [the requisite intent to commit the crime.] In the absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon.

*State v. Keitt*, 153 N.C. App. 671, 676-77, 571 S.E.2d 35, 39 (2002) (quoting *State v. Kornegay*, 149 N.C. App. 390, 395, 562 S.E.2d 541, 545 (2002).

Here the jury heard evidence from the State that showed defendant made careful plans to be alone with the child, and in at least one instance, tricked her into coming out of her room after she had locked herself away from him. Defendant offers only that he has abused alcohol and drugs for so long his memory has deteriorated to a point that he cannot remember the events for which he was convicted. A law enforcement officer who aided in the investigation and who spoke with defendant during an interview testified that his impression was that defendant "was using drugs and drinking heavily during that time and he did not remember a lot about what occurred back then." However, our Supreme Court had acknowledged the principle held by other jurisdictions that "[a]mnesia, loss of memory, may lead to crimes entirely unknown to the culprit at a later date. . . . [However,] [f]ailure to remember later, when accused, is in itself no proof of the mental condition when [sic] crime was performed." *State v. Caddell*, 287 N.C. 266, 286, 215 S.E.2d 348, 361 (1975) (quoting *Thomas v. State*, 201 Tenn. 645, 301 S.W. 2d 358). Defendant does not present evidence to support a conclusion that, at the time the acts were committed, his mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming the requisite intent. Absent such evidence, the trial court was not required to instruct the jury on voluntary intoxication and defendant cannot establish plain error.

## II

**[2]** Next, defendant argues the court erred in ordering him to register as a sex offender and submit to lifetime satellite-based monitoring. Defendant contends that, during the hearing on sex offender registration and satellite-based monitoring, the court erred in finding that defendant was convicted of attempted rape of a child, pursuant to N.C.G.S. § 14-27.2A, compelling enrollment in satellite-based monitoring for his natural life when in fact defendant was convicted of attempted rape pursuant to N.C. Gen. Stat. § 14-27.2. We agree with defendant's contention as to the order on satellite-based monitoring.

Within the North Carolina Sex Offender and Public Protection Registration Programs, codified in Article 27A of Chapter 14, first-degree rape, defined under § 14-27.2, and indecent liberties with children, defined under § 14-202.1, are classified as "sexually violent offenses." N.C.G.S. § 14-208.6(5) (2009). "A final conviction for . . . a sexually violent offense, or an attempt to commit [a sexually violent offense]" is a "reportable conviction." N.C.G.S. § 14-208.6(4). When

an offender is convicted of a reportable conviction as defined by G.S. 14-208.6(4), during the sentencing phase, the district attorney shall present to the court any evidence that the offender has been classified as a sexually violent predator, is a recidivist, that the conviction offense was an aggravated offense, that the conviction offense was a violation of G.S. 14-27.2A or G.S. 14-27.4A, or the offense involved the physical, mental, or sexual abuse of a minor. N.C.G.S. § 14-208.40A(a) (2009). "If the court finds that the offender has been classified as a sexually violent predator, is a recidivist, has committed an aggravated offense, or was convicted of G.S. 14-27.2A or G.S. 14-27.4A, the court shall order the offender to enroll in a satellite-based monitoring program for life." N.C.G.S. § 14-208.40A(c) (2009).

> (d) If the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of G.S. 14-27.2A or G.S. 14-27.4A and the offender is not a recidivist, *the court shall order that the Department do a risk assessment of the offender. . . .*

> (e) Upon receipt of a risk assessment from the Department pursuant to subsection (d) of this section, the court shall determine whether, based on the Department's risk assessment, the offender requires the highest possible level of supervision and monitoring. If the court determines that the offender does require the highest possible level of supervision and monitoring, the court shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court.

N.C.G.S. § 14-208.40A(d), (e) (2009) (emphasis added).

Defendant was convicted of attempted first-degree rape, pursuant to N.C.G.S. § 14-27.2, and five counts of indecent liberties with a child, pursuant to § 14-202.1. These are sexually violent offenses as defined under N.C.G.S. § 14-208.6(5) and thus reportable convictions subject to registration pursuant to Article 27A (Sex Offender and Public Protection Registration Programs). At the sentencing hearing, the court found that the offenses for which defendant was convicted "did involve the physical, mental, or sexual abuse of a minor . . . *but no risk assessment is required from the Department of Correction because lifetime satellite-based monitoring is required . . . .*" The court ordered that upon his release from imprisonment, defendant was to be enrolled in a satellite-based monitoring program for his natural life based upon a finding that defendant had been convicted of

DOUGHERTY EQUIP. CO., INC. v. M.C. PRECAST CONCRETE, INC.

[212 N.C. App. 509 (2011)]

"rape of a child, G.S. 14-27.2A, or sexual offense with a child, G.S. 14-27.4A, or an attempt, solicitation, or conspiracy to commit such offense . . . as a principal." However, defendant was convicted for offenses in violation of N.C.G.S. §§ 14-27.2 and 14-202.1, not G.S. § 14-27.2A or § 14-27.4A. Moreover, the court did not find that defendant was a sexually violent predator or that defendant was a recidivist, and the court found that the offense was not an aggravated offense. Therefore, the trial court erred in finding that lifetime satellite-based monitoring was required and in failing to order that a risk assessment of defendant be performed pursuant to N.C.G.S. § 14-208.40A(d) prior to ordering defendant to enroll in a lifetime satellite-based monitoring program upon release from prison. Accordingly, we reverse the lower court's order compelling lifetime satellite-based monitoring premised on a violation of a statute under which defendant was not convicted (N.C.G.S. § 14-27.2A) and remand for a new hearing.

Reversed in part and remanded.

Judges HUNTER, Robert C., and McCULLOUGH concur.